Al VERA, Edward Chen, Pauline Orcutt, Edward Blum, Kenneth Powers and Barbara L. Thomas, Plaintiffs,

v.

George W. BUSH, in his official capacity as Governor of the State of Texas, Bob Bullock, in his official capacity as Lt. Governor and President of the Texas Senate, Dan Morales, in his official capacity as Attorney General for the State of, Pete Laney, in his official capacity as Speaker of the Texas House of Representatives, and Antonio Garza, in his official capacity as Secretary of State of the State of Texas, Defendants,

v.

UNITED STATES of America, Defendant–Intervenor,

v.

Rev. William LAWSON, Zollie Scales, Jr., Rev. Jew Don Boney, Deloyd T. Parker, Dewan Perry, and Rev. Ceasar Clark, Defendants–Intervenors,

v.

LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), Defendants–Intervenors,

v.

Robert REYES, Angie Garcia, Robert Anguiano, Dalia Robles, Nicolas Dominguez, Oscar T. Garcia, and Ramiro Gamboa, Defendants–Intervenors,

v.

MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND, INC. (MALDEF), Defendant–Intervenor.

No. CIV.A. H–94–0277.

United States District Court, S.D. Texas, Houston Division.

Sept. 15, 1997.

Paul Loy Hurd, Monroe, LA, Ted Hirtz, Houston, TX, Danield E. Troy and Thomas W. Kirby, Wiley Rein & Fielding, Washington, DC, for Plaintiffs.

Richard E. Gray, III, Gray & Becker, Austin, TX, Javier Aguilar, Deborah Anne Verbil, Office of Atty. Gen., Austin, TX, for Defendants George Bush, Dan Morales, Bob Bullock, Antonio Garza and Pete Laney.

Robert A. Kengle, Steven H. Rosenbaum and Gary L. Hume, U.S. Dept. of Justice, Washington, DC, Nancy Herrera, U.S. Attorney's Office, Houston, TX, for U.S., Defendant-Intervenor.

Elaine Jones and Penda Hair, NAACP Legal Defense & Educ. Fund, Inc., Washington, DC, for Defendants-Intervenors William Lawson, et al.

Judith A. Sanders–Castro, Mexican-American Legal Defense & Educ. Fund, San Antonio, TX, for Defendants-Intervenors LULAC and Robert Reyes, et al.

Luis Wilmot and Alabert H. Kauffman, Mexican American Legal Defense & Educ. Fund, San Antonio, TX, for Defendants-Intervenors MALDEF.

J. Gerald Herbert, Alexandria, VA, for Amicus Eddie Bernice Johnson.

Keith P. Ellison, Law Office of Keith P. Ellison, Houston, TX, for Amici Sheila Jackson Lee and Gene Green.

Before EDITH H. JONES, Circuit Judge, and HITTNER and HARMON, District Judges.

## SECOND INTERIM REMEDIAL ORDER

This Court's August 6, 1996, Remedial Order directed the Texas legislature to adopt congressional redistricting legislation by June 30, 1997, to replace this Court's 1996 interim redistricting plan. The Texas legislature subsequently failed to enact congressional redistricting legislation during the 75th Regular Session. The full House passed Plan C764 which was never acted upon by the Senate, and the Senate Committee of the Whole on Legislative and Congressional Redistricting passed Plan C754 which was never acted upon by the full Senate. This Court's June 13, 1997, Order then instructed the parties to file briefs that detailed (1) the legal effect of the Texas legislature's failure to adopt a congressional redistricting plan, and (2) the actions that this Court should take prior to the 1998 elections.

Plaintiffs urge this Court to order a "substantially reconstructed" redistricting plan based upon the congressional districts in effect in the 1980s and Texas's traditional redistricting principles. Defendants Governor Bush, Secretary of State Garza, and Attorney General Morales take no position on what action this Court should take prior to the 1998 elections. Defendant Lieutenant Governor Bullock requests this Court to implement Plan C754 or, in the alternative, the Court's 1996 interim plan. Defendant Speaker of the House Laney requests this Court to implement Plan C764 or, in the alternative, the Court's 1996 interim plan. Defendants also request this Court to address the issue of population deviation between congressional districts in any plan it may order into effect for the 1998 elections. The Court has carefully considered the pleadings submitted by all parties and by various *amici curiae*.

Neither Plan C764 nor Plan C754 was passed by both houses of the Texas legislature and signed by the Governor. Obviously, they did not become law. This Court declines to consider either Plan C764 or Plan C754 as a valid expression of Texas's legislative will. Because the legislature has failed to act, this Court is left with the "unwelcome obligation" of providing a congressional redistricting plan for the 1998 and millennial election cycles pending later legislative action. *Wise v. Lipscomb*, 437 U.S. 535, 540, 98 S.Ct. 2493, 2497, 57 L.Ed.2d 411 (1978); *Connor v. Finch*, 431 U.S. 407, 415, 97 S.Ct. 1828, 1834, 52 L.Ed.2d 465 (1977).

This Court's 1996 interim congressional redistricting plan (Plan C745) corrected the basic constitutional infirmities found in Districts 18, 29, and 30. *See Vera v. Bush*, 933 F.Supp. 1341 (S.D.Tex.1996). Considering that Texas is but two election cycles away from redistricting the state following the year 2000 census, it is not prudent to once again redraw Texas's congressional districts. Stability and continuity in the electoral process as well as the potential for voter confusion all weigh against any further tinkering with Texas's congressional districts. While this Court's 1996 interim plan is not a perfect model of redistricting, because of the intense time constraints imposed upon this Court in crafting the plan, the interim plan must suffice at this late date and without legislative action.

■ Defendants argue that we must address the issue of population deviation between districts in any plan implemented for the 1998 election and beyond. Defendants Bullock and Laney specifically urge the adoption of Plans C764 and C754 on the ground that they address only the population deviations between the districts in the Court's 1996 interim plan. The Supreme Court stated in *Abrams v. Johnson* that "[c]ourt-ordered districts are held to higher standards of population equality than legislative ones. A court-ordered plan should 'ordinarily achieve the goal of population equality with little more than *de minimis* variation.'" —— U.S. ——, ——, 117 S.Ct. 1925, 1939, 138 L.Ed.2d 285 (1997) (quoting *Chapman v. Meier*, 420 U.S. 1, 26–27, 95 S.Ct. 751, 766, 42 L.Ed.2d 766 (1975)). "[A]bsolute population equality [is] the paramount objective." *Karcher v. Daggett*, 462 U.S. 725, 732, 103 S.Ct. 2653, 2659, 77 L.Ed.2d 133 (1983).

Despite these mandates governing a trial court's redistricting efforts, this Court finds—paralleling the Supreme Court's finding in *Abrams* regarding Georgia's congressional districts—that equitable considerations disfavor engaging in yet another redistricting effort to correct minuscule population deviations in this Court's 1996 interim plan. *See Abrams*, —— U.S. at —— – ——, 117 S.Ct. at 1940–41. The census data on which the 1996 interim plan's deviations are based are now more than six years old. In the interim, Texas's population has grown significantly. Texas is one of the fastest growing states in the nation, and its population continues to shift and migrate. *See* BUREAU OF CENSUS, U.S. DEPT. OF COMMERCE, STATISTICAL ABSTRACT OF THE UNITED STATES 29–30 tbls. 28 & 29 (1996) (showing Texas in tenth place among the states in percentage of population growth from 1990 to 1995 with 10.2% growth, and showing that Texas added 1,738,000 persons to its population from 1990 to 1995, second only to California). As a result, correcting for population deviation based on 1990 census figures would not reflect Texas's true population distribution. As the Supreme Court stated in *Abrams*, "*Karcher* was written only two years from the previous census, however, and we are now more than six years from one. The magnitude of population shifts since the census is far greater here than was likely to be so in *Karcher*." *Abrams*, —— U.S. at —— – ——, 117 S.Ct. at 1940–41. Because any correction for population deviation is unlikely to reflect the current populations of the districts in this Court's 1996 interim plan, we decline to adjust for any population deviation between districts.

Our reticence to act on increasingly outdated census data is heightened by the impact of the Fifth Circuit's recent decision in *Campos v. City of Houston*, 113 F.3d 544 (5th Cir.1997). We could not undertake another court-initiated redistricting without following *Campos*, yet to do so, based on 1990 census data, would, in the face of recently stepped-up immigration and naturalization among Texas residents, compound the inaccuracy of our efforts.

Finally, the Court reminds the Texas legislature that should it choose to pass its own congressional redistricting plan subsequent to this Order, the Court "will view skeptically

254

any final districting plan submitted by the state legislature that descends to districting at the census block level." *Vera*, 933 F.Supp. at 1348.

Accordingly, the Court

ORDERS that Texas's congressional elections continue to take place under this Court's 1996 interim redistricting plan (Plan C745) until the State of Texas enacts a congressional redistricting plan; and

ORDERS that the Court will retain jurisdiction over the state's redistricting of its congressional districts.