**FRIONA INDEPENDENT SCHOOL DISTRICT, and Jim Parker, Kenny Austin, Mike Scott, Hayden Merket, Don Carthel, Alan Monroe, Danny Black, Joe Santellana, Jayson Grimsley, and Lorraine Anthony, in Their Respective Capacities as Trustees of the Friona Independent School District Board of Trustees, Appellant,**

v.

**D.T. KING, Jr., Cynthia K. King, and N.J. K., Appellees.**

No. 07–00–0134–CV.

Court of Appeals of Texas, Amarillo.

April 20, 2000.

Thomas P. Brandt, Floyd R. Hartley, Jr., Fanning, Harper & Martinson, Dallas, for appellant.

Jack O. Nelson, Jr., Julie C. Shoop, Nelson & Nelson, Lubbock, for appellee.

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

QUINN, Justice.

The Friona Independent School District (FISD), Jim Parker, Kenny Austin, Mike Scott, Hayden Merket, Don Carthel, Alan Monroe, Danny Black, Joe Santellana, Jayson Grimsley, and Lorraine Anthony, in their official capacities as trustees of the FISD Board of Trustees (Trustees) appeal from an order granting D.T. King, Jr., Cynthia K. King, and N.J.K. (the Kings) a preliminary injunction.[1] Through the court's edict, FISD and its Trustees were enjoined from "directly or indirectly preventing N.J.K. from playing on, and participating as a member of, the baseball team of Friona High School, or from dismissing him, removing him, or excluding him ... from the [same] baseball team ...." The

appellate issues before us involve questions of jurisdiction and abused discretion. According to the FISD and its Trustees, the trial court lacked jurisdiction to grant the injunction because the Kings had not exhausted their administrative remedies. As to the matter of abused discretion, the court purportedly erred because 1) no evidence supported the finding that the Kings had a probable right of recovery *viz* their equal protection claim, 2) no evidence supported the finding that the Kings would suffer imminent or irreparable harm, and 3) the preliminary injunction granted the Kings the relief to which they could be entitled upon a final hearing on the merits. For the reasons that follow, we reverse.

## Background

While attending a party, N.J.K. (a senior at Friona High) was ticketed by police officers for possessing an alcoholic beverage. Employees of the FISD discovered this. As punishment, N.J.K. was to be temporarily suspended from the basketball team and made to do "rolls".[2] N.J.K. subsequently refused to do the rolls. His refusal purportedly jeopardized his ability to participate in any other sport at the high school. Furthermore, when N.J.K. later joined the baseball team, he was removed by a high school coach.

Objecting to the action, the Kings eventually complained to the FISD Board of Trustees. Thereafter, the board ratified the decision, which resulted in suit. In suing the FISD and its Trustees, the Kings sought both damages and equitable relief reinstating N.J.K. to the team. So too did they move for a temporary injunction barring the FISD and its Trustees from enforcing their decision. The trial court granted the temporary relief and enjoined N.J.K.'s removal from the team.

---

1. We further note that items in the appellate record indicate that Jim Parker, Kenny Austin, Mike Scott, and Hayden Merket are officers or employees of the FISD and not members of the FISD Board of Trustees. Nevertheless, in issuing its order granting in-

junction, the trial court expressly categorized them as board members. Given this, we so categorize them as well.

2. "Rolls" consisted of performing front and back rolls across the football field.

The FISD and its Trustees thereafter perfected this interlocutory appeal.

### Standard of Review

■ First, the standard of review used in assessing the validity of a temporary injunction is one of abused discretion; thus, we may not modify or reverse the decree unless such an abuse is clearly shown. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993); *In re Spiegel*, 6 S.W.3d 643, 645 (Tex.App.—Amarillo 1999, no pet.). Second, an abuse of discretion arises when the trial court acts without reference to applicable guiding principles, *In re Spiegel*, 6 S.W.3d at 645; *Sherrod v. Moore*, 819 S.W.2d 201, 202–203 (Tex. App.—Amarillo 1991, no writ); acts arbitrarily or unreasonably, *id.*, *Garth v. Staktek Corp.*, 876 S.W.2d 545, 548 (Tex.App.—Austin 1994, writ dism'd w.o.j.); misinterprets or misapplies the law, *id.*, or renders a decision without sufficient evidentiary basis. *In re Hamer*, 906 S.W.2d 263, 265 n .1 (Tex.App.—Amarillo 1995, no writ).

■ Third, the purpose of a temporary injunction is to preserve the status quo until a final hearing on the merits. *In re Spiegel*, 6 S.W.3d at 645; *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 597 (Tex.App.—Amarillo 1995, no writ). Furthermore, one is not entitled to same until he demonstrates a probable injury and a probable right of recovery. *In re Spiegel.*, 6 S.W.3d at 645. A probable right of recovery is proven by alleging the existence of a right and presenting evidence tending to illustrate that the right is being denied. *Id.; Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d at 597. Probable injury is proven through evidence of imminent harm, irreparable injury, and the lack of an adequate legal remedy. *Id.* As can be seen, both prongs require the presentation of evidence and, unlike temporary restraining orders, cannot be based upon sworn pleadings or affidavits unless the parties so agree. *Millwrights Local Union No. 2484 v. Rust Engineering Co.*, 433 S.W.2d 683, 685–87 (Tex.1968); *In re Spiegel*, 6 S.W.3d at 645.

■ Next, the temporary relief awarded cannot be such as to accomplish the object of the suit. *Texas Foundries, Inc. v. International Moulders & Foundry Workers' Union*, 151 Tex. 239, 248 S.W.2d 460, 464 (1952); *Cave v. Montgomery*, 259 S.W.2d 924, 926 (Tex.Civ.App.—Amarillo 1953, writ ref'd n.r.e.). To do so is tantamount to adjudicating the litigants' respective rights without the benefit of a trial and, therefore, is error. *Id.* So, should the temporary injunction contemplated by the trial court potentially have that effect, then it is incumbent upon that court to rearrange its docket so as to afford the defendants a trial without undue delay. *Texas Foundries, Inc. v. International Moulders & Foundry Workers' Union*, 248 S.W.2d at 464. Finally, to run afoul of the prohibition discussed in *Texas Foundries*, the injunction need not award the plaintiff all the relief sought in his original petition. It is enough that the edict afford him most or substantially all of it. *Garza v. City of Mission*, 684 S.W.2d 148, 154 (Tex.App.—Corpus Christi 1984, writ dism'd w.o.j.); *Global Nat. Resources v. Bear, Stearns & Co.*, 642 S.W.2d 852, 855 (Tex.App.—Dallas 1982, no writ).

### Application of Standard

*1. Jurisdiction*

■ Initially, FISD and its Trustees contended that the trial court lacked jurisdiction to entertain the lawsuit. This is purportedly so because the Kings did not exhaust their administrative remedies.[3] We agree in part and disagree in part.

---

3. The Kings assert that we lack jurisdiction to hear the Trustees on this issue because of the interlocutory nature of the appeal. We disagree. The Trustees were sued in both their individual and official capacities. Further-more, a suit against a government employee in his official capacity is in all actuality a suit against the entity for which he works. *Smith v. Davis*, 999 S.W.2d 409, 413 (Tex.App.—Dallas 1999, no pet.). From this it follows

■ Generally, a party to an administrative proceeding is not entitled to petition the courts until he has exhausted his administrative remedies. *Tex. Educ. Ag. v. Cypress–Fairbanks I.S.D.,* 830 S.W.2d 88, 90 (Tex.1992); *Roberts v. Hartley I.S.D.,* 877 S.W.2d 506, 507 (Tex.App.—Amarillo 1994, writ denied). Whether this rule applies to a particular dispute, however, depends upon several factors, one of which is the authority of the reviewing body to review the matter. If the administrative agency lacks jurisdiction to do so, then exhaustion is unnecessary. *Tex. Educ. Ag. v. Cypress–Fairbanks I.S.D.,* 830 S.W.2d at 90.

At bar, the potential body reviewing the actions of the FISD and its Trustees is the Texas Commissioner of Education (Commissioner). That is, one may appeal to the Commissioner if aggrieved by "the school laws of this state" or acts of the trustees which violate "the school laws of this state" or "a provision of a written employment contract . . . ." TEX. EDUC. CODE ANN. § 7.057(a)(1) & (2) (Vernon 1996). In other words, the Commissioner has authority to review matters involving "the school laws" of Texas and disputes involving employment contracts.

■ Since the controversy before us does not involve an employment contract, then the need to exhaust depends upon whether the contentions implicate "school laws of this state." And, in making that determination we turn to the definition of "school laws of this state" and find that it "means Title 1 and this title [Title 2 of the Texas Education Code] and rules adopted under those titles." TEX. EDUC. CODE ANN. § 7.057(f)(2). With this said, we now peruse the allegations asserted by the Kings.

■ As revealed by their live pleading, the Kings asserted causes of action based upon the violation of statute and state and federal constitutional provisions. As to the former, the statutes allegedly violated were sections 37.001 and 37.009 of the Texas Education Code. Perusal of that Code reveals that each is found under chapter 37, subtitle G of Title 2. Being so located, the Kings were obligated to appeal to the Commissioner any complaint regarding the violation of those two statutes. And, because the Kings neither presented this particular dispute to the Commissioner nor pled any exception relieving them from exhausting their administrative remedy, *see Janik v. Lamar Consolidated I.S.D.,* 961 S.W.2d 322, 324 (Tex.App.—Houston [1st Dist.] 1997, pet. denied) (holding that exceptions to the exhaustion requirement must be pled), the trial court lacked jurisdiction to entertain allegations concerning 37.001 and 37.009.[4]

that in granting relief against the employee in his official capacity, the relief is actually being granted against the entity. *Id.* Logically then, since the trial court enjoined the Trustees in their official, as opposed to individual, capacities, the injunction was effectively entered against the FISD. Next, a governmental unit, which includes a school district, may perfect an interlocutory appeal from an order that grants or denies a plea to the jurisdiction of the court. TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.014(a)(8) & 101.001(3)(B) (Vernon's Supp.2000). Given this and the fact that the relief entered against the Trustees in their official capacities equated relief entered against the FISD, we have jurisdiction to entertain the complaints of both the FISD and its Trustees *viz* exhaustion of administrative remedies. *Escajeda v.. Cigna Ins. Co.,* 934 S.W.2d 402, 405 (Tex.App.—Amarillo 1996, no writ) (indicating that the failure to exhaust administrative remedies affects the trial court's jurisdiction to act).

4. Nor do we accept the trial court's suggestion that the need to exhaust was vitiated by the fact that the dispute solely involved questions of law, as opposed to fact. Assuming *arguendo* that this is an exception to the rule, we note that the portion of the Kings' live pleading which concerns sections 37.001 and 37.009 of the Education Code illustrates that the dispute is rife with factual controversies. One concerns whether the rule upon which the FISD and its Trustees acted was "adopted" by the Board of Trustees and "posted and prominently displayed" as supposedly mandated by statute. Another concerns whether N.J.K. received notice of the charges against him and opportunity to respond. Those are fact issues which negate

■ As to the remaining causes of action, each entails allegations of breached constitutional right. And, because such rights do not arise under Titles 1 and 2 of the Education Code or rules adopted under those titles, the Commissioner lacked authority to entertain them. Thus, the Kings were not required to present their constitutional claims to the Commissioner, *Gibson v. Waco I.S.D.*, 971 S.W.2d 199, 202–203 (Tex.App.—Waco 1998, pet. granted), and the trial court had jurisdiction to entertain them.

In sum, the Kings were obligated to exhaust their administrative remedies *viz-a-viz* their claims arising under sections 37.001 and 37.009 of the Education Code, but not those arising under the Texas and United States Constitutions. So, the trial court lacked jurisdiction to entertain the former, but not the latter.

*2. Abused Discretion*

*a. Rendering Substantially All the Relief via Temporary Injunction*

■ As previously mentioned, a trial court cannot enter a temporary injunction that accomplishes the object of the suit. *Texas Foundries, Inc. v. International Moulders & Foundry Workers' Union, supra; Cave v. Montgomery, supra.* Furthermore, the heart of the controversy between the Kings and the FISD and its Trustees involves N.J.K.'s opportunity to play baseball during his senior year. Purportedly, if he is not permitted to play then his chances of obtaining a scholarship to attend college and play college baseball are greatly imperiled. And, though the Kings sought other relief, such as damages, to ameliorate the effects of FISD's and its Trustees'˙alleged misconduct, a principal aspect of the remedy sought nevertheless encompassed N.J.K.'s opportunity to play ball. Additionally, in barring N.J.K.'s removal from the baseball team via temporary injunction, the trial court scheduled a final hearing on the merits for September 25, 2000. Needless to say, by

the trial court's conclusion that the controversy involves only questions of law.

September of 2000, the Spring 2000 baseball season will have ended and N.J.K. will have graduated from high school.

■ In so postponing the ultimate adjudication of the dispute, the trial court has effectively awarded the Kings the principal relief they seek. So too has it denied the FISD and its Trustees their ability to enforce the school's disciplinary rules as they relate to N.J. K.'s misconduct, if any, and to punish him for committing that misconduct. In short, school districts not only have the obligation but also a right or privilege to control and discipline their students. *See Hailey v. Brooks*, 191 S.W. 781, 783 (Tex.Civ.App.—Fort Worth 1916, no writ) (recognizing that the right or privilege arises from the doctrine of *in loco parentis* ). Both are part and parcel of operating schools. And, by the trial court scheduling the ultimate hearing as it did, that right or privilege has for all practical purposes been denied the FISD and its Trustees without affording either a trial. Similarly, a primary object of the Kings' suit has been accomplished, again without trial. Consequently, the trial court violated the tenets of *Texas Foundries, Inc.* and its progeny. At the very least, it should have scheduled a final hearing on the dispute at a time which would have protected the rights and interests of all litigants. Because it did not, it abused its discretion.

*b. Probable Injury*

■ As previously mentioned, one seeking a temporary injunction must establish a probable injury. *In re Spiegel*, 6 S.W.3d at 645. Again, this consists of proving that harm or injury is imminent and irreparable via legal remedy. *Id.* Furthermore, the prong is not satisfied by evidence simply indicating that the harm or injury in question is merely possible or feared. *Frey v. DeCordova Bend Estates Owners Ass'n*, 647 S.W.2d 246, 248 (Tex. 1983); *Manufacturers Hanover Trust Co. v. Kingston Investors Corp.*, 819 S.W.2d

607, 611 (Tex.App.—Houston [1st Dist.] 1991, no writ). In that circumstance, the injury is nothing more than conjectural and insufficient to support injunctive relief. *Dallas Gen. Drivers, v. Wamix, Inc.,* 156 Tex. 408, 295 S.W.2d 873, 879 (1956); *Manufacturers Hanover Trust Co. v. Kingston Investors Corp.,* 819 S.W.2d at 611. If this were not the rule, then preliminary injunctions would no longer be the extraordinary remedy which they are intended to be.

Here, the alleged imminent harm found by the trial court consisted of N.J.K.'s being prevented from "pursuing his college education ... receiv[ing] a scholarship to an institution of higher learning, and ... play[ing] college baseball." Yet, the evidence of record illustrates that 1) N.J.K. applied for admittance into only one institution of higher learning, that is, Texas Tech University, 2) Texas Tech has not "said anything about [his] playing ball there," 3) N.J.K. has not applied for an athletic scholarship there, 4) N.J.K. has not "received any information from any college about an athletic scholarship," 5) N.J.K. lacks the ability to play baseball in a Division I or II college or university, 6) the teams on which he could conceivably play are those of small colleges with nominal baseball programs having little money for scholarships, 7) N.J.K. has not applied for admission in any of those small colleges, 8) N.J.K. "could possibly" play ball as a "walk on" and 9) it could not be said that N.J.K. "could get a scholarship" to play. This testimony was imparted by N.J.K.'s own witness and baseball coach who coached and recruited baseball players at the college level. Furthermore, this testimony belies all reasonable inference that N.J.K.'s inability to play baseball during the Spring 2000 season will prevent him from either obtaining a scholarship or attending college because of a lack of a scholarship.

Simply put, it is unreasonable to conclude that there exists a substantial likelihood that one will be prevented from playing college baseball or receiving a scholarship to do so when the record reveals that the youth lacks sufficient talent to play ball at Division I or II colleges and universities, has not applied for admission to any of the remaining colleges, has not applied for a scholarship to any college, and has not even heard about the possibility of playing baseball at the only university in which he currently seeks admittance. And, while one witness did relate that playing baseball during his senior year was "essential" to N.J.K.'s chances of playing college ball, that witness's other testimony illustrated that the boy's talents rendered suspect his ability to win either a scholarship or a spot on a ball team. And, the latter evidence is especially weighty given the evidence that N.J.K. has made little effort to inquire about scholarships, the chance to play ball on any particular college team, or even about admittance into college.

In sum, the evidence before the trial court evinced nothing more than the possibility of injury or harm. Being dependent upon such contingencies as the chance that 1) some college will express an interest in a player of N.J.K.'s limited skills, 2) a college will have scholarship funds available, 3) N.J.K. will apply for admission to that school or any other school wherein he is capable of making the team, 4) N.J.K. will satisfy the school's nonathletic entrance requirements, and 5) N.J.K. will even inquire into the possibility of playing ball for some college, the injury about which the Kings and trial court had concern is conjectural at best.

Schools are to be operated by school administrators. And, before a trial court can interfere with an administrator's authority and decisions via injunction, more is needed to illustrate imminent harm than that appearing in the record before us. Because no evidence of such harm existed here, the trial court abused its discretion in preliminarily enjoining the FISD and its

Trustees from removing N.J.K. from the baseball team.[5] *In re Hamer, supra.*

Accordingly, we reverse the order of the trial court granting the preliminary injunction. We further order that the preliminary injunction issued by the trial court be dissolved *in toto* and that the cause be remanded for further proceedings. TEX. R. APP. P. 43.1(c) & (d).

---

5. Concluding as we do relieves us from having to address the remaining issues of the FISD and its Trustees. Finally, because of the time constraints involved and our belief that oral argument would not significantly aid the court in determining the issues presented, we submit the dispute on the briefs of the parties and appellate record before us. TEX. R. APP. P. 2 & 39.8.