Rick **PERRY**, in his official capacity as Governor of the State of Texas, Henry Cuellar, in his official capacity as Secretary of State of the State of Texas, and Bill Ratliff, in his official capacity as Lieutenant Governor of the State of Texas, **Appellants**,

v.

Alicia **DEL RIO**, Phyllis Dunham, and Jeremy Wright, **Appellees**.

No. 03–01–00340–CV.

Court of Appeals of Texas, Austin.

Aug. 9, 2001.

---

Andy Taylor, Locke Liddell & Sapp LLP, Austin, E. Leon Carter, Case Carter Salyers & Henry P.C., Dallas, for appellants.

Renea Hicks, Austin, for appellees.

Before Chief Justice ABOUSSIE, Justices KIDD and YEAKEL.

ABOUSSIE, Chief Justice.

This is an interlocutory appeal from the district court's denial of a plea to the juris-

diction. We consider in this consolidated cause whether the district court committed reversible error in refusing to dismiss. We will affirm the district court's order.

Appellees (hereinafter "Del Rio") sued the governor, the lieutenant governor, the secretary of state, and the speaker of the house in their official capacities. Del Rio also sued the chairs of the state Republican and Democratic parties. Del Rio sought a declaratory judgment that the current congressional districts in Texas were unconstitutional and asked the district court (1) to enjoin appellants from continuing the current plan and (2) to set a deadline for redistricting, or, (3) if state authorities failed to meet that deadline, to impose a new, constitutionally-sound congressional plan. Appellants, the governor, the lieutenant governor, and the secretary of state, filed pleas to the jurisdiction.[1] The district court denied the pleas to the jurisdiction, and appellants filed this expedited interlocutory appeal. *See* Tex. R.App. P. 28.1. In this Court, Del Rio filed a motion to dismiss, arguing that we lack jurisdiction to consider this interlocutory appeal.

### Do we have jurisdiction to consider this appeal?

Appellants contend that this Court has jurisdiction under section 51.014 of the Civil Practice & Remedies Code, which authorizes certain kinds of interlocutory appeals, including the appeal of an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001." *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 51.014(a)(8), 101.001 (West Supp. 2001).[2] Del Rio argues that appellants are

---

1. The lieutenant governor filed a plea to the jurisdiction separate from the plea filed jointly by the governor and the secretary of state. The lieutenant governor's plea makes the

same arguments as does the plea filed by the governor and secretary of state.

2. In a case commenced before September 1, 2001, an appeal brought under section

not "governmental units" under section 101.001.

Section 101.001 defines "governmental unit" as follows:

(A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;

\* \* \*

(D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

*Id.* § 101.001.

■ We must decide whether the governor, lieutenant governor, and secretary of state, acting in their official capacities, are "governmental units" under sections 51.014 and 101.001. We strictly construe statutes giving us jurisdiction over interlocutory appeals. *America Online, Inc. v. Williams,* 958 S.W.2d 268, 271 (Tex.App.—Houston [14th Dist.] 1997, no writ).

Del Rio cites four cases involving attempted interlocutory appeals by school officials or employees in which the appellate courts held that individual employees or officials of school districts are not "governmental units" as contemplated by sections 51.014(a)(8) and 101.001. *See Castleberry Indep. Sch. Dist. v. Doe,* 35 S.W.3d 777, 780 (Tex.App.—Fort Worth 2001, pet. dism'd w.o.j.) (two school district employees); *University of Houston v. Elthon,* 9 S.W.3d 351, 354 (Tex.App.—Houston [14th Dist.] 1999, pet. dism'd w.o.j.) (university dean and employee); *Johnson v. Resendez,* 993 S.W.2d 723, 728 (Tex.App.—Dallas 1999, pet. dism'd w.o.j.) (school district superintendent and school principal); *Dallas County Cmty. Coll. Dist. v. Bolton,* 990 S.W.2d 465, 467 (Tex.App.—Dallas 1999, no writ) (individual trustees of community college).[3] Appellants cite to *Friona Independent School District v. King,* 15 S.W.3d 653 (Tex.App.—Amarillo 2000, no pet.), which held that the court had jurisdiction to consider an interlocutory appeal filed by individual school trustees sued in their official capacities. 15 S.W.3d at 657–58 n. 3. Although these cases may involve similar principles, we do not believe that the highest statewide officials in Texas occupy the same position as public school employees or trustees.

■ Under the statute in question, a governmental unit includes the state and its agencies that constitute the government of Texas, including all departments, offices, and any organ of government whose authority is derived from the state constitution. *See* Tex. Civ. Prac. & Rem.Code

51.014(a) has the effect of staying the commencement of trial pending resolution of the appeal. Tex. Civ. Prac. & Rem.Code Ann. § 51.014(b). Effective September 1, an interlocutory appeal under section 51.014(a)(8) does not automatically stay the underlying trial unless the plea to the jurisdiction is filed and submitted to or heard by the trial court by the later of (1) a date set out in a scheduling order or (2) 180 days after the defendant files its original answer, another responsive pleading, or a pleading raising an affirmative defense in response to the plaintiff's amended pleadings. *See* Act of May 21, 2001, 77th

Leg., 1st R.S., H.B. 978, § 1 (amending Tex. Civ. Prac. & Rem.Code Ann. § 51.014).

3. *Castleberry* and *Elthon* both quote the Civil Practice & Remedies Code; *Castleberry* cites *Elthon* and *Bolton* to support its conclusion and *Elthon* cites only *Bolton. Castleberry,* 35 S.W.3d at 780; *Elthon,* 9 S.W.3d at 354. *Bolton* cites *Johnson* as its only case law authority. *Bolton,* 990 S.W.2d at 467. *Johnson* cites only to sections 51.014(a)(8) and 101.001(3) in reaching its conclusion. *Johnson,* 993 S.W.2d at 728.

Ann. § 101.001. The Texas Constitution states, "The Executive Department of the State shall consist of a Governor, ... a Lieutenant Governor, [and] Secretary of State...." Tex. Const. art. IV, § 1. Except for the secretary of state, the officers of the executive department are elected by the voters of Texas. *Id.* § 2. Thus, the state constitution expressly provides that the governor, lieutenant governor, and secretary of state constitute, at least in part, the executive department of the government.

Appellants, in particular the governor, who is the chief executive officer of the state, function as organs of state government whose status and authority is derived from the Texas Constitution. *See id.* § 1; *see also id.* § 6 ("During the time he holds the office of Governor, he shall not hold any other office"). These appellants are all state officeholders acting in their official capacities; they derive their authority from the constitution and act on behalf of the state.

Included within the definition of governmental unit is the term "offices." An "office" may be defined as:

A right, and correspondent duty, to exercise a public trust. A public charge or employment. An employment on behalf of the government in any station or public trust, not merely transient, occasional, or incidental.... Although an office is an employment, it does not follow that every employment is an office.... [I]f the duty be a continuing one, which is defined by rule prescribed by the government, which an individual is appointed by the government to perform, who enters upon the duties appertain to his status, without any contract defining them, it seems very difficult to distinguish such a charge or employment from an office.... *In the constitutional sense, the term implies an authority to exercise some portion of the sovereign power, either in making, executing, or administering the laws.*

Black's Law Dictionary 1083 (6th ed.1990) (emphasis added). A "public office" is "[t]he right, authority, and duty created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of government for the benefit of the public," and "state offices" are "[p]ublic offices to be filled by the electorate of the entire state." *Id.; see also Guerrero v. Refugio County,* 946 S.W.2d 558, 569–70 (Tex.App.—Corpus Christi 1997, no writ), *overruled in part on other grounds by NME Hosps., Inc. v. Rennels,* 994 S.W.2d 142, 147 (Tex.1999). It is undisputed that appellants occupy state office. As such, they have authority to exercise some portion of the sovereign power of the state.

A suit against a governmental official in his or her official capacity alone is essentially a suit against the state. *See Liberty Mut. Ins. Co. v. Sharp,* 874 S.W.2d 736, 738 (Tex.App.—Austin 1994, writ denied). A suit seeking to enjoin an agency from acting may be brought against an individual officer of that agency, rather than in the name of the agency itself. *See Texas Workers' Comp. Comm'n v. Garcia,* 862 S.W.2d 61, 73 (Tex.App.—San Antonio 1993), *rev'd on other grounds,* 893 S.W.2d 504 (Tex.1995) (although it makes sense to bring injunction suit against specific officials, agency may be made party to declaratory judgment suit challenging constitutionality of law agency enforces); *Bagg v. University of Tex. Med. Branch,* 726 S.W.2d 582, 584–85 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) ("when a plaintiff seeks injunctive relief that involves an activity of a state agency he must sue some individual in authority at

that agency; he may not sue the agency itself").

An office cannot function except through the acts of its officeholder. Although the legislature could have included the words "state officials," "elected officials sued in their official capacity," or similar terms in section 101.001's definition of "governmental units," the inclusion of the term "offices" indicates an intent to include state officials sued in their official capacity. Furthermore, the governor, lieutenant governor, and secretary of state comprise the executive department and an organ of government, deriving their authority from the state constitution. For these reasons, we hold that this Court has jurisdiction to consider the interlocutory appeal under section 51.014(a)(8).

## Should the district court have granted the pleas to the jurisdiction?

Appellants argue that the district court should have granted their pleas to the jurisdiction because the cause was not ripe when filed and because the United States District Court for the Southern District of Texas has continuing jurisdiction over all suits challenging the current congressional apportionment plan.

### I. Chronology of events

Alicia Del Rio and others filed suit on December 27, 2000. Appellants filed their pleas to the jurisdiction on January 26, 2001. Appellants argued that the district court lacked jurisdiction over the cause because the federal district court that devised the current congressional districts in *Vera v. Bush*, 933 F.Supp. 1341 (S.D.Tex. 1996), retained jurisdiction. They also argued that Del Rio's claims were not ripe because the new census numbers had not yet been published and because Del Rio

alleged purely speculative claims. They make the same arguments here.

Del Rio filed an amended petition on May 31, stating that the legislature had adjourned on May 28 without having enacted a congressional redistricting plan. Del Rio stated that the governor had "publicly committed on May 26, 2001, in a letter to the leaders of the Texas Legislature, that he would not call a special session to consider congressional redistricting until and unless" the legislature drafted an "acceptable" redistricting plan and that the lieutenant governor was "aware of no current prospect that such a plan is likely."

A separate suit was filed against the same defendants by Martha Cotera on May 31, 2001. On motion of a party, the district court ordered the two cases consolidated on July 20.

Before the consolidation, however, the district court held a hearing on the Del Rio jurisdictional pleas on May 15 and requested additional briefing on whether Del Rio's claims were ripe and what impact, if any, the *Vera* court's jurisdiction had on the case.[4] The hearing was reconvened on June 1, after Del Rio filed her amended petition. The district court denied the pleas to the jurisdiction by order signed June 13. Appellants filed their notices of interlocutory appeal on June 15 and June 21 respectively.

### II. Should the district court have dismissed the cause for ripeness?

■ Appellants contend that the district court lacks jurisdiction and should have granted their pleas to the jurisdiction because Del Rio's claims were not ripe at the time the lawsuit was filed, before the legislature had convened and before Del Rio had any evidence that the legislature

4. About a month after the hearing, Del Rio dismissed her case against the State, maintaining her claims against the individual officeholders in their official capacities.

would fail to redraw the congressional districts. Appellants also contend that Del Rio could not cure this defect by amending her pleadings.

Appellants concentrate their arguments on Del Rio's claims, placing little emphasis on the fact that the *Cotera* case has been "consolidated and merged for all purposes" with the *Del Rio* cause.[5] Appellants argue that the ripeness of Cotera's claims have no effect on Del Rio's claims because the district court lacked jurisdiction over the *Del Rio* case and could not therefore properly have consolidated it with the *Cotera* case. We disagree.

■ A trial court always has jurisdiction to determine whether it has subject matter jurisdiction over a cause. *See Brown v. Herman*, 852 S.W.2d 91, 93 (Tex.App.—Austin 1993, no writ); *see also Slaton v. State*, 981 S.W.2d 208, 209–10 n. 3 (Tex. Crim.App.1998) ("The 'jurisdiction' to determine jurisdiction is the inherent authority of a court to decide whether documents filed with it invoke its jurisdiction. This differs from a court's jurisdiction to dispose of a case on the merits."). The question a trial court must answer is whether the ripeness doctrine *deprives* the court of subject-matter jurisdiction.

■ Subject-matter jurisdiction refers to the kinds of controversies a court has authority to hear, as determined by the constitution, jurisdictional statutes, and the pleadings. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996); *Bullock v. Briggs*, 623 S.W.2d 508, 511 (Tex.App.—Austin 1981, writ ref'd n.r.e.). Ripeness implicates subject-matter jurisdiction and emphasizes the requirement of a concrete injury in order to present a justiciable claim. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex.2000); *Patterson*

*v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex.1998). Ripeness concerns when an action can be brought; the requirement conserves judicial time and resources for real and current controversies rather than hypothetical or remote disputes. *Gibson*, 22 S.W.3d at 851–52; *Patterson*, 971 S.W.2d at 442–43; *Texas Dep't of Banking v. Mount Olivet Cemetery Ass'n*, 27 S.W.3d 276, 282 (Tex.App.—Austin 2000, pet. denied). An opinion issued in a case that is not ripe would be an advisory opinion because, rather than remedying an actual or imminent harm, it would address only a hypothetical injury. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex.1993). Courts of this state may not issue advisory opinions. *Patterson*, 971 S.W.2d at 443; *Texas Ass'n of Bus.*, 852 S.W.2d at 444.

■ In determining whether a cause is ripe for judicial consideration, we look to see whether the facts have sufficiently developed to show that an injury has or is likely to occur. *Patterson*, 971 S.W.2d at 442. A claimant is not required to show that the injury has already occurred, provided the injury is imminent or sufficiently likely. *Gibson*, 22 S.W.3d at 852; *Patterson*, 971 S.W.2d at 442. A claimant can demonstrate the existence of a concrete injury by showing that it is likely to occur. *Patterson*, 971 S.W.2d at 442–43. Although the inquiry may be directed to the time when the cause is filed, the courts have also recognized that the claimant is entitled to amend his pleadings to cure a ripeness challenge and that a reviewing court may review the entire record to determine whether the evidence supports the claimant's allegations of the threat of harm. *Gibson*, 22 S.W.3d at 853; *Patterson*, 971 S.W.2d at 443–44. A per-

---

5. Appellants filed their appellate briefs on July 2 and July 12, before the district court signed the order consolidating the *Del Rio*

and *Cotera* cases. They filed a reply brief on August 8.

son seeking a declaratory judgment need not have incurred actual injury; a declaratory judgment action will lie if the facts show the presence of "ripening seeds of a controversy." *Mount Olivet*, 27 S.W.3d at 282 (quoting *Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153–54 (Tex. App.—Austin 1998, no pet.)).

 The legislature convened in January and adjourned *sine die* on May 28 without having enacted a congressional redistricting plan. Thus, our review is made easier by the fact that the *Del Rio* case has been consolidated and merged with the *Cotera* case which when filed on May 31 was ripe on its face. Appellants' challenges to the district court's refusal to dismiss the case have, to a large degree, been rendered moot by that consolidation.[6] We need not examine the district court's decision in detail because the case before us is an interlocutory appeal of a *consolidated* lawsuit, and we must examine the district court's decision in light of the cause as it is presented to us. Our task is simply to determine whether the district court must, as a matter of law, dismiss this lawsuit *as consolidated.* See *Buckley v. Valeo*, 424 U.S. 1, 114–17, 96 S.Ct. 612, 46

L.Ed.2d 659 (1976); *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 139–40, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). When viewed in this light, our decision becomes obvious.

Cotera's claims are clearly ripe. She filed her suit on May 31, three days after the legislature adjourned without having passed a redistricting bill.[7] By that point, at the latest, complaints concerning the congressional districts could not be said to be hypothetical or remote. Once the legislature adjourned without having passed a redistricting bill, the issue was ripe for litigation.

Having determined Cotera's claims were ripe, we need not decide the issue regarding Del Rio's claims because the two causes are now consolidated. We must decide the appeal based upon the posture of the record before us. In reviewing the cause as presented to us on appeal, we cannot say the district court erred in refusing to dismiss.

### III. Does the Vera court maintain jurisdiction?

 Appellants also argue that the United States District Court for the South-

---

6. Whether to consolidate two cases is a question left to the trial court's discretion. *Owens–Corning Fiberglas Corp. v. Martin*, 942 S.W.2d 712, 716 (Tex.App.—Dallas 1997, no writ). "When actions are properly consolidated they become merged and are thereafter treated as one suit...." 1 Tex. Jur.3d *Actions* § 77 (1993); *see Rust v. Texas & P. Ry. Co.*, 107 Tex. 385, 180 S.W. 95, 95–96 (1915) ("the order of consolidation having been properly made, there remained no separable cause of action. It became but one suit....").

7. In a separate mandamus proceeding, appellants argue that Cotera's claims were not ripe because she filed her suit before the governor announced he would not call a special legislative session. Under article IV, section 8, of the Texas Constitution, dealing with the governor's power to convene the legislature on "extraordinary occasions," the governor may

call a special session at any time and for any reason. Tex. Const. art. IV, § 8 interp. commentary (West 1997). The governor's ability to call a special session or his decision not to call such a session does not restrict a trial court's jurisdiction over redistricting claims.

Appellants further contend that appellees make conflicting arguments by seeking to use the consolidation to "ripen" Del Rio's claims but also to use Del Rio's December filing date to gain precedence in determining primary trial court jurisdiction. However, the decision of which trial court may have primary jurisdiction is not before us. We only decide the limited question of whether the district court reversibly erred in refusing to dismiss the cause in light of its current posture. We express no opinion on the substantive issues of this case, either before or after consolidation.

ern District of Texas, by its 1996 ruling in *Vera*, maintains continuing jurisdiction over challenges to the existing congressional districts. Although appellees' pleadings allege that the existing districts are no longer properly apportioned, they complain that the incorrect apportionments are due to changes in population and population concentrations in the ten years *since* the 1990 census. They do not complain that the existing districts were wrongly drawn in response to the 1990 census; they complain that the 2000 census shows a need to redraw those districts. If appellants' argument is correct, the *Vera* court arguably retains jurisdiction over *any* redistricting case complaining of the continued use of the 1991 congressional districts in light of the 2000 census. However, appellants recognize that "state courts almost certainly will have a role in the redistricting process."

In its August 6, 1996 order, the *Vera* court issued an interim plan redrawing a number of congressional districts it found to be unconstitutional. *See Vera*, 933 F.Supp. at 1352–53. The order concluded with the statement, "the Court will retain jurisdiction over these matters." *Id.* at 1353. We do not read this statement as broadly as appellants.[8] It is clear that the *Vera* court meant to maintain jurisdiction over redistricting arising out of the 1990 census so that it could monitor any legislative action that might involve racial gerrymandering. *See id.* at 1352–54; *see also Vera v. Bush*, 980 F.Supp. 251, 253–54 (S.D.Tex.1997). The district court did not err in refusing to dismiss the cause on the grounds that the *Vera* court had continuing jurisdiction.

### Conclusion

We hold that this Court has jurisdiction to decide this interlocutory appeal. We further hold that based on the record before us we cannot say that the district court erred in refusing to dismiss the suit for lack of jurisdiction. We affirm the district court's order denying appellants' pleas to the jurisdiction.

---

8. We believe our interpretation is bolstered by the same court's order filed a year later in *Vera v. Bush*, 980 F.Supp. 251 (S.D.Tex.1997) ("*Vera II* "). The court was asked in *Vera II* again to revise the congressional districts because it was clear that the 1990 census data no longer accurately represented the population as distributed throughout Texas. 980 F.Supp. at 252–53. The *Vera II* court declined to redistrict a second time, noting that the 2000 census would be taken soon and observing that another redistricting would be confusing to the voters. *Id.* at 253. The court concluded that elections should continue under its 1996 plan "until the State of Texas enacts a congressional redistricting plan" and ordered that "the Court will retain jurisdiction over the state's redistricting of its congressional districts." *Id.* at 254.