TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00648-CV






Assignees of Best Buy, Office Max, and CompUSA, Appellants (1)


v.


Susan Combs, State of Texas Comptroller of Public Accounts, and

Greg Abbott, Attorney General of Texas, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. D-1-GN-10-001182, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING




O P I N I O N



 This appeal of the trial court's order granting the appellees' plea to the jurisdiction
arises from the Assignees' settlement of two other lawsuits, which were filed as class actions. In
those lawsuits (the "Retailer Suits"), the named plaintiffs sought a refund of Texas sales taxes that
they and the putative-class members allegedly overpaid on items purchased from certain Best Buy,
Office Max, and/or Comp USA stores (collectively, the "Retailers") under mail-in rebate promotions.
The named plaintiffs in the Retailer Suits contended that the Retailers had failed to refund sales tax
to them on the rebated amounts. The Retailers and the putative classes tentatively settled the cases
by agreeing that the Retailers would assign their refund claims to the putative-class members to
allow the individual class members to pursue their assigned refund claims from the Comptroller. (2) 

 In the orders preliminarily approving settlement ("settlement orders"), the trial
courts approved the classes for settlement purposes only and appointed settlement-class counsel
to represent the settlement-class members in the Retailer Suits and in the presentation of
the individuals' claims to the Comptroller. (3) The orders provided that settlement-class counsel was
"given full power of attorney to represent such Settlement Class Members in their individual claims
against the Comptroller." The settlement-class members, through settlement-class counsel, filed
their assigned claims for refunds with the Comptroller as three aggregated claims, one for
each Retailer. See Tex. Tax Code Ann. § 111.104 (West 2008) (establishing procedure for filing
tax-refund claims). (4) Settlement-class counsel requested that the bulk payments be made payable to
the settlement classes for distribution after notice to the class and final approval of the settlements
by the trial courts. The Comptroller's staff initially denied the claims, and after a contested-case
hearing before an administrative law judge (ALJ), the ALJ recommended that the refund denial be
upheld. The Comptroller issued a ruling denying the refund claims.

 The Assignees (and the settlement-class representatives) then filed this suit under
tax code section 112.151, asserting that the Comptroller erred by (1) denying them authority to
file their refund claims, (2) failing to toll limitations for Assignees whose claims arose within four
years before the Assignees filed their original lawsuit against the Retailers, and (3) rejecting the
Assignees' documentation of their refund claims. See id. § 112.151 (West Supp. 2011) (allowing
suit for tax refund after denial of claim). The Comptroller filed a plea to the jurisdiction, asserting
that the Assignees did not properly exhaust their administrative remedies because settlement-class
counsel lacked authority to file a refund claim on behalf of the individual settlement-class members.
The trial court granted the plea to the jurisdiction, dismissing the Assignees' lawsuit.

 The Assignees appeal the dismissal order, arguing that the trial court improperly
sustained the Comptroller's plea to the jurisdiction, which they contend is an improper collateral
attack on the orders in the Retailer Suits granting preliminary approval to those suits' settlement.
The Assignees contend that the trial courts had jurisdiction to include pursuit of the individual class
members' administrative claims before the Comptroller in the scope of class counsel's duties in the
Retailer Suits. We will affirm the dismissal of the Assignees' lawsuit against the Comptroller.


BACKGROUND


The Retailer Suits

 Some additional detail about the factual and procedural background of the Retailer
Suits and this lawsuit is necessary to provide context for our decision. In our decision in Levy v.
Office Max, 228 S.W.3d 846, 848-49 (Tex. App.--Austin 2007, no pet.), we provided a brief
history of the Retailer Suits up to the time of that appeal. For our purposes in this appeal, we need
only explain that although the Comptroller had been joined in one of the Retailer Suits (the one
against Best Buy and OfficeMax), she filed a plea to the jurisdiction in that suit, which was granted.
Id. at 848. The plaintiffs did not appeal that order. Id. The order appealed in Levy was a final order
dismissing all of the plaintiffs' claims except for the putative-class representatives' individual claims
for injunctive relief to compel assignments from the Retailers of the Retailers' refund claims against
the Comptroller and for damages beyond the amount of any tax refund. Id. The plaintiffs appealed
only the trial court's dismissal of the class claim seeking to compel an assignment of the Retailers'
rights to file a refund claim with the Comptroller. Id. at 849.

 As part of our decision, we explained that section 111.104(b) of the tax code precludes
consumers from filing a refund claim with the Comptroller because they did not pay the tax
"directly" to the state, but that they could file a refund claim with the Comptroller after procuring
an assignment from the Retailers. Id. at 850 (construing section 111.104(b), which allows person
who "directly" paid tax to state, that person's attorney, assignee, or other successor to file refund
claim); see also Tex. Tax Code Ann. § 111.104(b). We concluded that the district court had
jurisdiction to consider the plaintiffs' claims against the Retailers to compel an assignment of
the Retailers' refund rights and to consider whether a class should be certified. Levy, 228 S.W.3d
at 852. We did not opine on whether the tax code allows a class action for refund claims. See id.
at 851 (noting that neither tax code nor Comptroller's regulations contain express language
allowing class actions for refund claims). Without opining on the merits of the plaintiffs' claims for
assignments from the Retailers, we remanded the case to the district court for consideration of the
plaintiffs' claims and motion to certify a class. Id. at 851 n.2, 852.

 After we issued our decision in Levy, the plaintiffs settled with the Retailers. As
explained above, the terms of the settlement agreements required the Retailers to assign their rights
to assert refund claims to the class members. The trial courts granted preliminary approval of the
proposed Retailer settlements and certified classes only for settlement purposes. All three orders
define the class similarly, as consisting of those persons or entities who were Texas residents that
redeemed mail-in rebates for a taxable purchase made during a certain date range at one of the
Retailers' Texas stores (and for CompUSA and Best Buy, via Internet or telephone order and
shipped to a Texas address). 

 Only the CompUSA settlement order contains any analysis of the class-certification
requirements of Texas Rule of Civil Procedure 42(a). The trial court found that the numerosity
requirement was satisfied because there were over 200,000 potential class members, that the
proposed class representatives' claims were typical of the other potential class members' claims,
and that proposed class counsel and the proposed class representatives would adequately represent
the class. See Tex. R. Civ. P. 42(a). The trial court also found that the commonality requirement
was met because all potential class members made purchases subject to sales tax and all mailed in
applications for retailer rebates. In addition, the trial court found that two questions of law were
common to all potential class members: (1) whether sales tax is ultimately due to the Comptroller
on amounts that retailers refund to customers via rebates and (2) if sales tax is not due on amounts
that retailers refund to customers via rebates, whether an injunction should be issued requiring the
Retailers to refund sales tax to customers who had redeemed Retailer rebates. (5)

 The CompUSA order also contains the only analysis of why the trial court found that
the class should be certified as a mandatory class as provided in Texas Rule of Civil Procedure
42(b)(2). The trial court found that the declaratory relief sought predominated over any monetary
relief, which was incidental to the declaratory judgment that sales tax is not due on retailer rebates
and the injunctive relief requiring assignments. See Tex. R. Civ. P. 42(b)(2) (allowing class action
to be maintained on ground that "the party opposing the class has acted or refused to act on grounds
generally applicable to the class, thereby making appropriate final injunctive relief or corresponding
declaratory relief with respect to the class as a whole"). All three orders noted that notice to the class
would not be required until settlement-class counsel sought final approval of the settlement and
disbursement of any recovery "on behalf of the Settlement Class" because the settlement class was
being conditionally certified for settlement purposes as a mandatory class under Rule 42(b)(2).
Compare Tex. R. Civ. P. 42(c)(2)(A) (allowing court to direct appropriate notice to class for class
certified under Rule 42(b)(1) or (2)) with Tex. R. Civ. P. 42(c)(2)(B) (requiring court to direct
notice and opt-out opportunity to class members at time of class certification for classes certified
under Rule 42(b)(3)).

 As previously mentioned, when the trial courts granted preliminary approval of
the settlements, in addition to appointing Perlmutter & Schuelke, LLP as settlement-class counsel
in the class cases, they also granted the firm power of attorney to represent the settlement-class
members in the presentation of their individual claims to the Comptroller. The trial courts ordered
that Perlmutter & Schuelke was appointed:


 to represent the Settlement Class Members in the presentation of their individual
claims for refunds to the Comptroller and to pursue any and all necessary
administrative appeals and proceedings in all courts. Perlmutter & Schuelke, L.L.P.
is hereby given full power of attorney to represent such Settlement Class Members
in their individual claims against the Comptroller . . . . 


The terms of the settlement agreements required settlement-class counsel to diligently seek full tax
refunds for all of the settlement-class members in proceedings before the Comptroller and any
subsequent available appeals. The settlement agreements also all contemplated that settlement-class
counsel would seek a percentage of the total refunds recovered from the Comptroller for attorney's
fees and expenses when seeking final approval of the settlement at the conclusion of the
administrative process.


Administrative proceedings before the Comptroller

 Perlmutter & Schuelke filed three written claims with the Comptroller on behalf
of the individual settlement-class members, explaining that their "clients ha[d] been assigned the
single claim" of each of the Retailers for sales tax paid on purchases for which a cash discount was
offered through a retailer rebate. With each of the three claims, settlement-class counsel submitted
a spreadsheet containing each Assignee's name, purchase date, and rebate amount, which had
been compiled from information provided to settlement-class counsel by the Retailers. They sought
refunds totaling $1,276,312.55 for the CompUSA Assignees; $11,054,086.76 for the Best Buy
Assignees; and $1,999,768.83 for the OfficeMax Assignees. Settlement-class counsel requested
that the checks for the bulk payments be made payable to the settlement classes for distribution after
final approval of the settlements by the trial courts.

 As mentioned earlier, the Comptroller's staff denied the refund claim. The staff based
its denial primarily on the grounds that the settlement classes lacked standing to file the refund
claims for the individual class members. After a contested-case hearing, the ALJ recommended that
the refund denial be upheld. The Comptroller also denied the refund claims. When the Comptroller
issued her ruling, she made some changes to the proposal for decision to reflect her determination
that the ALJ improperly concluded that our ruling in Levy allowed class-action refunds. (6) In each of
her decisions, the Comptroller found that the settlement class had filed a refund claim on behalf of
the members of the class. She concluded, however, that (1) the tax code does not authorize a class
to file a refund with the Comptroller, (2) the tax code does not give the Comptroller the statutory
authority to grant a class-action refund, (3) the settlement class was required to submit the supporting
documentation required by the Comptroller for verification of the refund claim, and (4) the statute
of limitations expired for claims arising from tax that was due and payable more than four years
before the refund claim was filed on April 16, 2008. Accordingly, she denied the refund claims.

 The Assignees filed motions for rehearing, asserting that the Comptroller erred by
(1) denying them authority to file their refund claims, (2) failing to toll limitations for Assignees
whose claims arose within four years before the Assignees filed their original lawsuit against the
Retailers, and (3) rejecting Assignees' documentation of their refund claims. The Comptroller denied
these motions.


This lawsuit

 After the denial of the motions for rehearing, the settlement-class representatives,
along with the other Assignees, "including but not limited to those whose names appear on the
compact disks attached" to the petition, sued the Comptroller. The petition sought "aggregate refunds
for assignees of each of the retailers" in the following amounts: $1,604,367.17 for the CompUSA
Assignees; $11,017,104.44 for the Best Buy Assignees; and $1,999,730.71 for the Office Max
Assignees. The Assignees incorporated their motion for rehearing and its attached exhibits, their
claim submissions to the Comptroller, into their petition.

 The Comptroller filed a plea to the jurisdiction, asserting that the Assignees had not
properly exhausted their administrative remedies because settlement-class counsel lacked authority
to file an individual refund on behalf of each individual putative-class member. See Tex. Gov't Code
Ann. § 311.034 (West Supp. 2011) (establishing that statutory prerequisites to suit are jurisdictional
requirements in suits against governmental entities); see also Tex. Tax Code Ann. § 111.104(d)
(establishing that failure to file timely refund claim waives any demand against State for alleged
overpayment). The Comptroller contended that the trial courts in the Retailer Suits did not have
jurisdiction to appoint settlement-class counsel to be the individual counsel for hundreds of thousands
of absent class members for the purpose of initiating separate administrative proceedings against the
Comptroller, who was not a party to the orders preliminarily approving the class settlements. The
Comptroller collaterally attacked the trial courts' appointment orders as void, contending that the
trial courts lacked jurisdiction to enter those particular orders (to enter orders appointing class
counsel to individually represent the settlement-class members in another lawsuit) and jurisdiction
of the subject matter (because there was no justiciable controversy between the Retailers and the
class concerning representation of the individuals in the administrative proceeding). See Austin Indep.
Sch. Dist. v. Sierra Club, 495 S.W.2d 878, 881-82 (Tex. 1973) (identifying four circumstances in
which court's judgment is void and subject to collateral attack). The Comptroller also contended
that the appointment orders are void because they constitute fundamental error that directly and
adversely affects the public interest as declared in the statutes or constitution of Texas. See Wagner
v. D'Lorm, 315 S.W.3d 188, 192 (Tex. App.--Austin 2010, no pet.). The Comptroller argued that
in this case the appointment orders constitute fundamental error because they would circumvent the
procedural safeguards of Texas Rule of Civil Procedure 42, prevent her from implementing the
warrant-hold statutes, potentially harm absent class members, and violate the tax code. For all these
reasons, the Comptroller argued, the appointment orders are void and settlement-class counsel could
not be considered the individual Assignees' "attorney" within the meaning of section 111.104 of the
tax code and could not exhaust administrative remedies on those individuals' behalf. Consequently,
the Comptroller asserted, the Assignees have failed to comply with the statutory requirements to
waive sovereign immunity for tax-refund suits.

 The Assignees responded that the trial courts had jurisdiction to define the scope of
class counsel's duties on behalf of the class and that the Retailers and the class were adverse until
the settlement was final, so the controversy was a justiciable one. The Assignees also argued that
the appointment orders did not constitute fundamental error because the trial courts appropriately
certified the classes for settlement purposes as Rule 42(b)(2) classes, which allowed the trial courts
to postpone notice to the class and the ability to opt out until the parties seek final approval of the
settlement. The Assignees further asserted that the ability to opt out at the time of final settlement
approval adequately protects the absent class members' rights and that the Comptroller would be able
to implement the warrant-hold statutes because she had the class members' names. They contended
that because this Court had determined in Levy that the trial courts had jurisdiction to consider the
Assignees' claims against the Retailers to compel an assignment of refund rights and to consider
class certification, the appointment orders did not violate the tax code's lack of authorization of a
class-action proceeding for refund claims. See Levy, 228 S.W.3d at 851-52. The Assignees also
contended that the appointment orders were merely voidable, not void, and thus, the Comptroller
should have given them effect throughout the administrative process.

 The trial court granted the Comptroller's plea to the jurisdiction. The Assignees then
perfected this appeal.


STANDARD OF REVIEW

 Sovereign immunity from suit defeats a trial court's jurisdiction and therefore is
properly asserted in a plea to the jurisdiction. Texas Dep't of Parks & Wildlife v. Miranda, 133
S.W.3d 217, 225-26 (Tex. 2004). Whether a court has subject-matter jurisdiction is a question of
law. Id. at 226. 

 Some pleas to the jurisdiction may be determined solely from the pleadings. Id. In
other cases, such as this one, we must consider evidence challenging the existence of jurisdictional
facts to resolve the jurisdictional issues raised. See id. at 226-27. In these cases, the applicable
standard of appellate review depends on whether the jurisdictional facts implicate the merits of the
plaintiff's case and whether the evidence is disputed. University of Tex. v. Poindexter, 306 S.W.3d
798, 806-08 (Tex. App.--Austin 2009, no pet.). When the jurisdictional issue does not implicate
the merits of the case and the jurisdictional facts are undisputed, the trial court should make the
jurisdictional determination as a matter of law based solely on the undisputed facts. Id. at 806.

 The Comptroller's plea to the jurisdiction challenged the existence of the jurisdictional
facts alleged by the Assignees--specifically, whether the Assignees had exhausted their administrative
remedies through settlement-class counsel's filing of their aggregated refund claims with the
Comptroller. The jurisdictional issue--whether the trial courts had jurisdiction to appoint settlement-class counsel to represent the Assignees in their individual proceedings before the Comptroller--does
not implicate the merits of the Assignees' case (i.e., whether they are owed tax refunds on the
rebated portions of their purchases). See id. at 807-08. In this case, the relevant jurisdictional facts
are undisputed. Thus, the trial court was required to resolve the jurisdictional issue on the basis of
those undisputed facts. Id. at 808. Accordingly, whether the Assignees exhausted their administrative
remedies is a question of law we review de novo. See id. at 807-08.


DISCUSSION

 In her plea to the jurisdiction, the Comptroller collaterally attacked the trial courts'
orders as void. As a result, we must decide whether the trial courts in the Retailer Suits had jurisdiction
to enter the orders appointing settlement-class counsel to represent the class members in an
individual capacity in separate, non-class-action refund proceedings before the Comptroller. If they
did not, then those appointment orders are void, settlement-class counsel had no authority to file the
individual Assignees' refund claims, the Assignees in effect never appeared before the Comptroller,
and the trial court in this case correctly granted the Comptroller's plea to the jurisdiction.

 A collateral attack seeks to avoid the binding force of a judgment in a proceeding not
instituted for the purpose of correcting, modifying, or vacating that judgment. Browning v. Prostok,
165 S.W.3d 336, 346 (Tex. 2005). The collateral attack is brought by a party seeking some specific
relief that the judgment currently bars; in this case, the Comptroller seeks to avoid payment of
aggregated refunds to the Assignees based on the claims filed by settlement-class counsel. See id.
Because the collateral attack by definition is not a direct attack and can arise in a variety of contexts,
no set procedure exists for collaterally attacking a judgment. (7) See Texas Dep't of Transp. v. T. Brown
Constructors, Inc., 947 S.W.2d 655, 659 (Tex. App.--Austin 1997, pet. denied). Only a void
judgment may be collaterally attacked. Browning, 165 S.W.3d at 346. The judgment of a court of
general jurisdiction is void only when it is apparent that the court had (1) no personal jurisdiction
over a party or his property, (2) no jurisdiction over the subject matter, (3) no jurisdiction to enter
the particular judgment, or (4) no capacity to act as a court. Sierra Club, 495 S.W.2d at 881-82. A
judgment is also subject to collateral attack for "fundamental error," which occurs when "'the record
shows the court lacked jurisdiction or the public interest is directly or adversely affected as that
interest is declared in the statutes or the Constitution of Texas.'" Wagner, 315 S.W.3d at 192 (quoting
Pirtle v. Gregory, 629 S.W.2d 919, 920 (Tex. 1982)).

 The Assignees assert in one issue that the trial court erred by sustaining the
Comptroller's plea to the jurisdiction because the plea was an improper collateral attack on the
trial courts' orders that established settlement-class counsel's duties, including the pursuit of the
Assignees' individual administrative claims. The Assignees make three arguments to support their
contention that the trial courts had jurisdiction to enter the appointment orders. First, they argue that
the trial courts (1) had jurisdiction over the subject matter because of our decision in Levy and (2)
had jurisdiction to enter the particular orders because they have implied authority under Texas Rule
of Civil Procedure 42 to define the scope of class counsel's duties to accomplish the purposes of
class actions. Second, the Assignees argue that there was no fundamental error in the appointment
orders. Third, they argue that the appointment orders resolved a justiciable controversy because the
putative classes were adverse to the Retailers until the settlements were approved.


Jurisdiction over the subject matter

 The Assignees contend that in the Levy decision this Court resolved the issue of
whether the trial courts had jurisdiction over the subject matter by concluding that those courts had
jurisdiction to consider the putative classes' claims against the Retailers for assignment of refund
rights. See Levy, 228 S.W.3d at 851-52. The Comptroller agrees that this is the Court's holding in
Levy. But the Comptroller asserts that the trial courts' subject-matter jurisdiction to consider the
limited issue of a putative class's claim for injunctive relief in the form of an assignment cannot be
extended to include jurisdiction to appoint individual counsel for hundreds of thousands of absent
potential claimants in separate and independent actions before the Comptroller for a tax refund. See
id. at 849 (noting that appellants did not appeal Comptroller's dismissal from suit).

 Subject-matter jurisdiction refers to a court's power to hear a particular type of suit.
See CSR Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996) (distinguishing between subject-matter
jurisdiction as court's power to hear particular type of suit and personal jurisdiction as court's
power to bind particular person or party); see also Perry v. Del Rio, 53 S.W.3d 818, 824 (Tex.
App.--Austin 2001) ("Subject-matter jurisdiction refers to the kinds of controversies a court has
authority to hear, as determined by the constitution, jurisdictional statutes, and the pleadings."),
dism'd as moot, 66 S.W.3d 239 (Tex. 2001). It is clear from our previous decision in Levy that the
trial courts had the power to hear the Retailer Suits and consider the putative classes' claims for
injunctive relief in the form of assignments. Thus, the central question here is whether the trial courts
had jurisdiction to enter the particular orders in those Retailer Suits appointing class counsel to act
as individual counsel for absent class members in separate administrative proceedings. (8)


Jurisdiction to enter the particular orders

 A challenge to a court's jurisdiction to enter a particular order "strikes at the very
power of the court to render the judgment." Sierra Club, 495 S.W.2d at 882. The Texas Constitution
vests the judicial power of this State "in one Supreme Court, in one Court of Criminal Appeals, in
Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of
Justices of the Peace, and in such other courts as may be provided by law." Tex. Const. art. 5, § 1.
Express grants of jurisdiction in the constitution and statutes apportion the judicial power among
these various courts. See Eichelberger v. Eichelberger, 582 S.W.2d 395, 398 (Tex. 1979). Thus,
a particular court's jurisdiction is the portion of judicial power that it has been expressly authorized
to exercise by the constitution or statutes. Id.

 In addition to the express grants of judicial power to each court, courts also have
implied and inherent powers. Id. A court's inherent judicial powers originate from the duties and
responsibilities that the constitution has created and delegated to the court--they are administrative
powers, not jurisdictional powers. Id. at 398-99 (explaining that inherent powers are those upon
which court may call "to aid in the exercise of its jurisdiction, in the administration of justice, and
in the preservation of its independence and integrity"); State Bar of Tex. v. Gomez, 891 S.W.2d 243,
245 (Tex. 1994) (explaining inherent powers are administrative, not jurisdictional). Implied powers
do not have an independent basis like inherent powers do. Instead, they are powers "which can and
ought to be implied from an express grant of power." Eichelberger, 582 S.W.2d at 399-400 (holding
that supreme court's express jurisdiction to resolve questions of law arising in cases decided by
intermediate appellate courts gave it implied jurisdiction to correct intermediate appellate court's
decision that was contrary to decision of United States Supreme Court).

 Texas district courts are courts of general jurisdiction. Dubai Petrol. Co. v. Kazi,
12 S.W.3d 71, 76 (Tex. 2000). A district court's jurisdiction "consists of exclusive, appellate, and
original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive,
appellate, and original jurisdiction may be conferred by this Constitution or other law on some other
court, tribunal, or administrative body." Tex. Const. art. V, § 8; see also Tex. Gov't Code Ann.
§ 24.007 (West Supp. 2011) (granting jurisdiction to district courts as provided in article V, section 8
of Texas Constitution). A district court may hear any case "that is cognizable by courts of law or
equity and may grant any relief that could be granted by either courts of law or equity." Tex. Gov't
Code Ann. § 24.008 (West 2004). Courts of general jurisdiction are presumed to have subject-matter
jurisdiction unless a showing can be made to the contrary. Dubai, 12 S.W.3d at 75. In this case, the
parties agree that the trial courts in the Retailer Suits had subject-matter jurisdiction over the putative
classes' claims seeking to compel assignments of the Retailers' rights to request sales-tax refunds,
see Levy, 228 S.W.3d at 852, but they disagree about the extent of the trial courts' powers that can
be implied from the express authority granted to the courts by Rule 42 to administer class actions,
see Tex. R. Civ. P. 42.

 As a preliminary matter, we address the Assignees' contention that the supreme
court's decisions in Dubai and In re United Services Automobile Ass'n require us to conclude that
the trial courts had jurisdiction to enter the particular orders. See In re United Servs. Auto. Ass'n,
307 S.W.3d 299, 309 (Tex. 2010); Dubai, 12 S.W.3d at 76. The Assignees assert that the effect of
these decisions is that the Comptroller must show affirmative legislative intent to make the trial
courts' power to determine the scope of class counsel's duties under Rule 42 a jurisdictional matter.
But the holding of those cases is that a statutory prerequisite to suit is not jurisdictional unless
the statute's language shows clear legislative intent to treat the restriction as jurisdictional. USAA,
307 S.W.3d at 306-07 (explaining difference between mandatory, but not jurisdictional, statutory
requirements and requirements that are both mandatory and jurisdictional); Dubai, 12 S.W.3d at
76-77 (distinguishing between statutory prerequisites that establish party's right to go forward with
suit under wrongful-death statute for death in foreign state or country and trial court's subject-matter
jurisdiction over wrongful-death claim). Contrary to the Assignees' assertion, the supreme court
did not hold in Dubai and USAA that clear legislative intent to make an issue jurisdictional must be
shown before a party can challenge a trial court's power to decide the issue. In addition, the question
here is not whether the Assignees failed to establish a prerequisite to suit in the Retailer Suits and
whether that failure should be considered jurisdictional; the question is whether Rule 42 allows trial
courts to grant settlement-class counsel the authority to represent individual absent class members
in their individual refund proceedings before the Comptroller. See Dubai, 12 S.W.3d at 76-77
(explaining that plaintiff's right to maintain suit by satisfying statutory prerequisites relates to
plaintiff's right to relief, not to court's jurisdiction to provide requested relief). Consequently, we
need not determine whether the legislature affirmatively intended to make this issue jurisdictional.
Instead, we must determine the parameters of the relief that Rule 42 allows trial courts to provide.

 The Assignees contend that the trial courts had jurisdiction to enter the appointment
orders because they have implied authority under Texas Rule of Civil Procedure 42 to define the
scope of class counsel's duties to accomplish the purposes of class actions. The Assignees focus on
the language of Rule 42 that gives trial courts the power to appoint class counsel to represent the
interests of the class and to make orders in connection with that appointment. In particular, the
Assignees base their argument that Rule 42 allows trial courts to define the duties of class counsel
on the rule's provisions that (1) class counsel must fairly and adequately represent the interests of the
class and (2) a court certifying a class may make further orders in connection with its appointment
of class counsel. See Tex. R. Civ. P. 42(g)(1)(B), (g)(1)(C)(iv). They argue that from this language
we can imply that the trial courts have jurisdiction to define the scope of class counsel's duties to
include representing hundreds of thousands of absent individual class members in individual refund
proceedings outside the original class actions. They also assert that the courts' jurisdiction must
encompass this implicit judicial power to accomplish the judicial-economy purpose of class actions
by preventing a burdensome multiplicity of suits and the possibility of inconsistent results. Finally,
to further support their contention that we should imply judicial power to establish individual
attorney-client relationships between class counsel and the members of the settlement classes, they
rely on the fiduciary duties that all class counsel owe to their clients to establish that attorneys for
a class have an existing attorney-client relationship with each individual member of that class. We
will address each of these arguments in turn.


 Rule 42's plain language limits the relief that trial courts may provide

 We begin by examining the language of Rule 42. When construing rules of civil
procedure, we apply the same rules of construction that we use when interpreting statutes. In re
Christus Spohn Hosp. Kleberg, 222 S.W.3d 434, 437 (Tex. 2007). Our primary objective is to give
effect to the drafter's intent, which we discern from the plain and common meaning of the rule's
words. See State v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006) (addressing statutory construction).
If the rule's language is unambiguous, we must interpret it according to its plain meaning, giving
meaning to the language consistent with other provisions in the rule. See TGS-NOPEC Geophysical
Co. v. Combs, 340 S.W.3d 432, 439, 441 (Tex. 2011) (addressing statutory construction). We typically
give undefined terms in a statute their ordinary meaning, but we will apply a different or more
precise definition, if one is apparent from the term's use in context. Id. We will not give an
undefined term a meaning that is inconsistent or not in harmony with other provisions in the rule.
See McIntyre v. Ramirez, 109 S.W.3d 741, 745 (Tex. 2003). We presume that the legislature chooses
a statute's language with care, purposefully choosing each word it includes, while purposefully
omitting words not chosen. TGS-NOPEC, 340 S.W.3d at 439. We may consider other factors in
ascertaining the intent behind a rule, including the rule's objective and the consequences of a
particular construction. See Tex. Gov't Code Ann. § 311.023(1), (5) (West 2005) (establishing
statutory-construction aids); see also Shumake, 199 S.W.3d at 284.

 Rule 42's plain language establishes that "[a]n order certifying a class action must
define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule
42(g)." (9) Tex. R. Civ. P. 42(c)(1)(B) (emphasis added). Rule 42(g) reiterates that a court certifying
a class "must appoint class counsel" and further provides that "[a]n attorney appointed to serve
as class counsel must fairly and adequately represent the interests of the class." Tex. R. Civ. P.
42(g)(1)(A) (emphasis added). The court certifying a class and "appointing class counsel . . . may
make further orders in connection with the appointment" of class counsel. Tex. R. Civ. P.
42(g)(1)(C)(iv) (emphasis added). Rule 42 governs only class actions--not individual proceedings.
Rule 42(g) governs only appointment of class counsel--not counsel for individual absent class
members.

 Under the rule, the appointment of class counsel only happens when a court enters
a certification order defining the class and the class claims, issues, or defenses. See Tex. R. Civ. P.
42(c)(1)(B). In other words, when the court appoints class counsel, it appoints class counsel to serve
the interests of the class, as that class and its claims, issues, or defenses are defined in the
certification order. Thus, when read as a whole, the language of the rule expressly limits the class's
interests to the interests defined in the certification order.

 In this case, the trial courts certified settlement classes consisting of people who were
Texas residents at the time they redeemed mail-in retailer rebates for taxable purchases from the
Retailers during certain defined time periods. The only settlement order that defined the class claims
identified the only unresolved common issue of law as the question of "whether an injunction should
be issued requiring Retailers to refund sales tax to customers who have redeemed Retailer rebates"
and found that the putative class also sought an injunction to require the Retailer to provide
assignments to the class members so that the "members may seek refunds directly from the
Comptroller." In addition, as noted earlier, the only class claim remaining in the Retailer Suits after
this Court's opinion in Levy was the claim seeking to compel the Retailers to assign their rights to
request refunds from the Comptroller. Levy, 228 S.W.3d at 852. And all the settlement agreements
approved by the courts provided that the Retailers would execute assignments and deliver them to
settlement-class counsel. All the orders note that the settlement classes were being conditionally
certified for settlement purposes as Rule 42(b)(2) mandatory classes. As one trial court explained
in its order, this meant that notice need not be given to the class members at the time of preliminary
approval of the settlements because the primary relief sought in the lawsuit and provided in the
settlement was injunctive, non-monetary relief.

 The limited injunctive relief sought by the class here is the primary distinction
between this case and the cases cited by the Assignees for the proposition that it is within the
courts' power to appoint counsel to represent class members in separate proceedings when that
representation is in the best interest of the class. In all of those cases, the class claims were claims
for monetary relief, not injunctive relief, meaning that class members received notice and an
opportunity to opt out at the time of class certification. (10) In addition, all of those cases involved
extraordinarily complex class claims and equally complex settlements. (11) Moreover, none of those
cases involved pursuit of a different type of relief against a defendant who was not already a party
to the class action. In Allapattah Services, Inc. v. Exxon Corp., class counsel continued to represent
the class members in a special claims process arranged by the court as part of the same case; the trial
court linked the potential award of attorneys' fees to the success of the claims-administration
process. 454 F. Supp. 2d 1185, 1189 (S.D. Fla. 2006) (explaining that trial court required completion
of claims process before payment of attorneys' fees to align interest of class counsel with potential
class members instead of leaving burden of finding class members to third-party claims administrator).
In the rest of the cases, the assigned claims were assigned to the class for pursuit by the class, not
its individual members, and the assigned claims were claims against non-settling defendants assigned
to the class by the settling defendants. See LaSala v. E*Trade Secs., LLC, No. 05 Civ. 5869(SAS),
2005 WL 2848853, at *1 (S.D.N.Y. Oct. 31, 2005) (explaining that assigned claims would ultimately
be pursued by Litigation Trustee on behalf of class if settlement was approved); In re Austrian &
German Bank Holocaust Litig., 317 F.3d 91, 93 (2d Cir. 2003) (discussing settlement involving
assignment of claims to class, not individual class members); In re Austrian & German Bank
Holocaust Litig., 80 F. Supp. 2d 164, 171 (S.D.N.Y. 2000) (explaining Austrian banks' claims
against other banks were assigned to class as part of class settlement). These cases do not support
the Assignees' contention that Rule 42 impliedly empowers trial courts to establish an individual
attorney-client relationship between class counsel and absent class members to allow class counsel
to pursue individuals' claims in separate, non-class proceedings.

 We cannot conclude from Rule 42's express grant of power to appoint class counsel
that the trial courts had the implied authority to appoint class counsel to act as individual counsel to
individual class members in separate actions outside the class actions suing a different defendant and
seeking a different type of relief. The plain language of Rule 42 limits the relief that the trial courts
could provide to the settlement classes to the confines of their class claim for assignments. "When
a statute clearly limits the relief which may be given in a particular situation, a judgment which
attempts to give relief other than that authorized is void. . . . [And] [t]he effect of the Texas Rules
of Civil Procedure is similar." (12) Gus M. Hodges, Collateral Attacks on Judgments, 41 Tex. L. Rev.
499, 515-17 (1963) (collecting cases). Accordingly, we conclude that the plain language of Rule 42
does not support an implied power to enter the appointment orders.


 The power Assignees seek to imply does not further Rule 42's purpose

 We are not persuaded by the Assignees' argument that the trial court's express power
to administer class actions gives it the implied power to appoint class counsel to act as individual
counsel as a means of furthering the judicial-economy purpose of class actions. First, if settlement-class counsel truly represents the hundreds of thousands of individuals on an individual (not
class) basis, it is unclear how this process avoids the possibility of an "inefficient and burdensome
multiplicity of suits" or serves judicial economy. Moreover, the Assignees' argument highlights
the inherent contradiction in their position. They concede that "the Tax Code does not allow
administrative class refund claims." But at the same time, they are requesting that the Comptroller
write three checks that aggregate the refund amounts owed to the Assignees for later distribution to
these individuals--a process that conspicuously mimics class-action procedure, particularly in light
of the provisions in the settlement agreements providing that class counsel will seek court approval
to have attorney's fees deducted from the total amounts obtained from the Comptroller. In addition,
their rationale for the trial courts' purported jurisdiction to appoint settlement-class counsel as
individual counsel to the Assignees depends on asserted benefits to the classes, but the classes are
settlement-only classes that were approved for the sole limited purpose of obtaining assignments of
the refund claims from the Retailers for the class members. The assignments are the only thing that
the class members need to file their own claims with the Comptroller. Their ability to pursue their
individual refunds is not enhanced by appointment of an attorney (without their knowledge or
consent) to represent their individual interest before the Comptroller.

 Judicial economy is not the only objective of class action; "[o]ne of the foremost
objectives of Rule 42 is to protect the interests of absent class members." General Motors Corp. v.
Bloyed, 916 S.W. 949, 953 (Tex. 1996) (noting that "class actions are extraordinary proceedings with
extraordinary potential for abuse"). Whatever the putative classes' original or ultimate goal may
have been, the only claim resolved by the preliminary settlement approval orders was the claim for
assignments from the Retailers. We will not imply judicial power to appoint class counsel to act as
individual counsel in individual proceedings to extend the reach of a limited-purpose class action
beyond the certified class claims, especially when the parties agree that the tax code does not allow
class actions for sales-tax refund claims.


 Counsel's fiduciary duties to the class do not support an implied power to appoint
counsel to represent individual class members in other individual proceedings

 Nor are we persuaded that the existence of an attorney-client relationship between
class counsel and absent class members gives rise to an implied power for trial courts to establish
individual attorney-client relationships between class counsel and the absent individuals. The existence
of fiduciary duties alone does not mean that the same type of relationship exists between class
counsel and their class clients as exists between attorneys and individuals in non-class actions.
There are important differences between the two, not least of which is the differing responsibility
for client communications. Rule 42 governs class counsel's communications with absent class
members in a class action, which often does not occur until near the conclusion of the case. See Tex.
R. Civ. P. 42(c)(2)(A) (governing notice to class certified under Rule 42(b)(1) or (2)); Tex. R. Civ.
P. 42(e)(1)(B) (governing notice of material terms of proposed settlement). Communications with
individual clients, on the other hand, are governed solely by Texas Disciplinary Rule of Professional
Conduct Rule 1.03. Rule 1.03 requires an attorney to "keep a client reasonably informed about the
status of a matter and promptly comply with requests for information." Tex. Disciplinary Rules
Prof'l Conduct R. 1.03(a). It also requires an attorney to "explain a matter to the extent reasonably
necessary to permit the client to make informed decisions regarding the representation." Tex.
Disciplinary Rules Prof'l Conduct R. 1.03(b). Given these differences, we decline to imply that the
trial courts have power to appoint class counsel to represent individual class members by filing
individual claims for them seeking a different type of relief when the individuals have been provided
no notice of their attorney-client relationship and no opportunity to make informed decisions about
their representation. We conclude that the jurisdiction to enter the particular orders at issue may not
be implied from Rule 42 because the rule's express language contemplates only class representation,
and neither the judicial-economy purpose of class actions nor the fiduciary duties owed by class
counsel to the class support an implication of any additional power.

 We hold that the trial courts in the Retailer Suits lacked jurisdiction to appoint
settlement-class counsel to represent the individual Assignees in the presentation of their individual
refund claims to the Comptroller. (13) Thus, those portions of the settlement orders purporting to appoint
settlement-class counsel as counsel for the individuals are void. As a result, the Assignees did not
properly exhaust their administrative remedies because settlement-class counsel lacked authority to
file individual refund claims on their behalf. The lack of exhaustion of administrative remedies means
that the Assignees have not satisfied the statutory requirements for waiving sovereign immunity in
a tax-refund suit. We overrule the Assignees' issue on appeal.


CONCLUSION

 Having determined that the trial court did not err by granting the Comptroller's plea
to the jurisdiction, we affirm the judgment.


 __________________________________________

 David Puryear, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: July 20, 2012

1. We will refer to the appellants in this case as the "Assignees." As we will explain, they
are the individual settlement-class members (except for the named plaintiffs who were appointed the
settlement-class representatives) of settlement classes approved in class actions in which they
obtained assignments to pursue certain retailers' rights for Texas sales-tax refunds. When the
appellants filed their original notice of appeal, they appealed on behalf of all plaintiffs in the case
below, and the case was styled as Tara Levy, Robert Tycast, Vivian Faywood, John Butler, Rockey
Piazza, Linda Piazza, and Paul Denucci, et al. v. Susan Combs, Comptroller of Public Accounts of
the State of Texas, and Greg Abbott, Attorney General of the State of Texas. They later filed an
amended notice of appeal to indicate that the appeal was filed on behalf of all plaintiffs other than
Tara Levy, Robert Tycast, Vivian Faywood, John Butler, Rockey Piazza, Linda Piazza, and Paul
Denucci, the settlement-class representatives. The appellants have requested that they be designated
as the "Assignees of Best Buy, Office Max, and CompUSA" because the trial court's dismissal order
does not apply to the settlement-class representatives. We have amended the style of the case to
correctly reflect the parties to this appeal.
2. The appellees in this case are Susan Combs, Comptroller of Public Accounts of the State
of Texas, and Greg Abbott, Attorney General of the State of Texas. We refer to them collectively
as the "Comptroller."
3. We will refer to the portions of the settlement orders that appointed settlement-class
counsel to represent the settlement-class members in the presentation of the individuals' refund
claims to the Comptroller as the "appointment orders."
4. We cite to the current versions of the statutes and administrative code for convenience
because there have been no intervening amendments that are material to our disposition of this
appeal.
5. The order stated that the common issue of whether sales tax is due on amounts refunded
to customers via retailer rebates had already been decided on summary judgment.
6. As noted above, in Levy, we did not opine on whether the tax code allows a class action
for refund claims. Levy v. Office Max, 228 S.W.3d 846, 851 (Tex. App.--Austin 2007, no pet.). In
this appeal, the Assignees have conceded that "the Tax Code does not allow administrative class
refund claims," so again we do not opine upon this issue.
7. The Assignees contend that the Comptroller does not have standing to challenge the
appointment orders because she was not a party to the Retailer Suits when the courts issued
the orders. The Comptroller is not bringing a direct attack; she need not have been a party to the
Retailer Suits to bring a collateral attack. See Grynberg v. Christiansen, 727 S.W.2d 665, 666-67
(Tex. App.--Dallas 1987, no writ) (holding that judgment may be collaterally attacked by one who
was not party to but who has substantial interest in subject matter of judgment (citing Dean v. First
Nat'l Bank of Athens, 494 S.W.2d 222, 226 (Tex. Civ. App.--Tyler 1973, writ ref'd n.r.e.))). She
seeks to avoid the prior judgments' effect in the administrative refund proceedings. The Assignees
also assert that the Comptroller does not have a justiciable interest in challenging the trial courts'
jurisdiction to appoint individual counsel. But as discussed below, the Comptroller has an interest
in defending her authority to deny a claim on the ground that the person who filed the claim does
not satisfy the statutory prerequisites for filing. Furthermore, this controversy will be resolved
by the relief she sought at the trial court and continues to seek here--a ruling that the trial
courts' appointment orders are void. Thus, a justiciable controversy exists between the parties, and
the Comptroller has standing to collaterally attack the prior judgments in this lawsuit. See Todd,
53 S.W.3d at 305.

 The Assignees also argue that the Comptroller has no standing under the tax code to
challenge the appointment of counsel because the code does not authorize it. We disagree. The tax
code empowers the Comptroller to collect taxes and to adopt rules for the enforcement of the code
and the collection of taxes under the code. See Tex. Tax Code Ann. § 111.002 (West 2008). The
tax code also empowers the Comptroller to determine whether a tax refund is due when a claim is
filed. Id. § 111.104 (West 2008). It is within the Comptroller's statutory authority to deny a claim
on the ground that the person who filed the claim with her office does not satisfy the statutory
definition of a person who may file a claim. See id. § 111.104(b). This exercise of the Comptroller's
statutory authority and the Comptroller's decision to collaterally attack the trial courts' orders as
void as part of her exercise of that authority do not violate the separation-of-powers doctrine, as
Assignees further contend. The Comptroller's challenge in this lawsuit of the trial courts' orders
in another lawsuit in no way interferes with the judicial process. See General Servs. Comm'n v.
Little-Tex Insulation Co., 39 S.W.3d 591, 600 (Tex. 2001).
8. We note that the parties have also raised the issue of whether the appointment orders
resolved a justiciable controversy between the putative classes and the Retailers. We recognize that
this issue also implicates the trial courts' subject-matter jurisdiction because it is related to standing,
which is a necessary component of subject-matter jurisdiction. See Texas Workers' Comp. Comm'n
v. Garcia, 893 S.W.2d 504, 517-18 (Tex. 1995). The standing doctrine identifies those suits that are
appropriately resolved through the judicial process. Brown v. Todd, 53 S.W.3d 297, 305 (Tex. 2001)
(citing Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990)). "Standing limits subject matter
jurisdiction to cases involving a distinct injury to the plaintiff and 'a real controversy between the
parties, which . . . will be actually determined by the judicial declaration sought.'" Id. (quoting
Texas Workers' Comp. Comm'n v. Garcia, 893 S.W.2d 504, 517-18 (Tex. 1995). We need not reach
the issue of whether the putative classes' standing to seek assignments in the Retailer Suits translates
into standing for the putative classes to seek the appointment orders because we ultimately conclude
that the dispositive issue in this case is the trial courts' lack of jurisdiction to enter the particular
orders. See Tex. R. Civ. P. 47.1 (court of appeals must hand down written opinion that is as brief
as practicable but that addresses every issue raised and necessary to final disposition of appeal).
9. "Class" commonly means "[a] group of people . . . that have common characteristics or
attributes," and as noted, Rule 42 further provides a mechanism by which the trial court must define
the class and its claims if the court determines that certification of a case as a class action is
appropriate. Black's Law Dictionary 284 (9th ed. 2009). By way of contrast, the term "individual"
is commonly understood to mean "[o]f or relating to a single person or thing, as opposed to a group."
Id. at 843.
10. See Allapattah Servs., Inc. v. Exxon Corp., 454 F. Supp. 2d 1185, 1191 (S.D. Fla. 2006)
(noting Exxon paid $1.075 billion into settlement fund); LaSala v. E*Trade Secs., LLC, No. 05 Civ.
5869(SAS), 2005 WL 2848853, at *1 (S.D.N.Y. Oct. 31, 2005) (explaining case arose from pending
partial settlement between plaintiff investor class and issuer defendants in hundreds of coordinated
securities actions known as In re Initial Public Offering Securities Litigation seeking recovery for
securities fraud); In re Austrian & German Bank Holocaust Litig., 317 F.3d 91, 92 (2d Cir. 2003)
(explaining appeal arose from creation of multi-billion dollar fund created to compensate Holocaust
victims for conversion of assets); In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d
164, 167, 169 (S.D.N.Y. 2000) (explaining class representatives sought approval of proposed partial
settlement creating multi-million dollar fund); see also Fed. R. Civ. P. 23(c)(2)(B) (requiring notice
and opt-out option for Rule 23(b)(3) class at time of certification).
11. See Allapattah Servs., 454 F. Supp. 2d at 1189 (noting complexity of class action resulting
in two trials, extensive appeals, hotly contested claims administration process, and settlement
providing 92% of class members with full compensatory damages); LaSala, 2005 WL 2848853, at
*1 (partial settlement of IPO litigation cases, which included assignment of issuer defendants' claims
against underwriter defendants to plaintiffs); In re Austrian & German Bank Holocaust Litig., 317
F.3d at 93-96 (discussing settlement of consolidated cases against various Austrian and German
banks involving assignment of Austrian banks' claims against German banks and subsequent
complications and possible conflict of interest arising from proposed dismissal of case against
German banks); In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d at 170 (explaining
claims process to be supervised by claims committee appointed by court).
12. For example, an order requiring a party to produce documents in discovery that could not
be the subject of discovery under the applicable civil-procedure rule is void. Gus M. Hodges,
Collateral Attacks on Judgments, 41 Tex. L. Rev. 499, 517 (1963) (analyzing cases in which various
civil-procedure rules limited available relief).
13. Because we have concluded that the trial courts had no jurisdiction to enter the
appointment orders and thus the orders are void, we need not reach the Assignees' remaining
argument that the orders did not constitute fundamental error. See Tex. R. Civ. P. 47.1 (court of
appeals must hand down written opinion that is as brief as practicable but that addresses every issue
raised and necessary to final disposition of appeal).